UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

HAMIDUR RAHMAN, on behalf of himself,
FLSA Collective Plaintiffs, and the Class,

                          Plaintiff,

       v.

LIMANI 51, LLC
   d/b/a LIMANI,
ESTIATORIO LIMANI LLC
   d/b/a LIMANI,
and CHRISTOS SPYROPOULOS,

                        Defendants.

-------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: ___8/31/22_____ |

20-CV-6708 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Hamidur Rahman ("Plaintiff") brings this action against Defendants Limani 51, LLC

d/b/a Limani ("Limani 51") and Estiatorio Limani LLC d/b/a Limani ("Limani of Roslyn")

(collectively "Restaurants"), as well as Christos Spyropoulos ("Spyropoulos") (together with the

Restaurants, "Defendants").  On behalf of himself and a proposed class, Plaintiff alleges that

Defendants improperly deducted meal credits from his pay in violation of the Fair Labor

Standards Act ("FLSA")[1] and in violation of the New York Labor Law ("NYLL"); that

Defendants improperly deducted tip credits from his pay in violation of the NYLL; and that

Defendants failed to provide proper wage statements in violation of the NYLL.  On behalf of

himself only, Plaintiff alleges that Defendants discriminated against him on the basis of race and

national origin in violation of the New York State Human Rights Law ("State HRL") and the

New York City Human Rights Law ("City HRL").  For the following reasons, Defendants'

---

[1] Plaintiff brings his FLSA claim as a collective action.

Motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint and documents attached to and referenced therein; they are assumed to be true for purposes of this motion. The Court provides background only as needed to resolve the pending Motion to Dismiss.

This action arises out of Plaintiff's employment at "Limani 51," a restaurant in Manhattan at which Plaintiff was employed as a server from "in or around April 17, 2017" until "in or around September 8, 2019." Plaintiff claims that both Limani 51 and Limani of Roslyn are liable for his injuries, because they were operated as a single integrated enterprise.

The Restaurants share many features that suggest that they were operated as a single integrated enterprise. Both Restaurants are New York companies. Both Restaurants are owned and operated by Spyropoulos. Spyropoulos is listed as a principal on both Restaurants' New York State liquor licenses.

Plaintiff asserts that Spyropoulos had control over the terms and conditions of employment at both restaurants: that Spyropoulos set and enforced employment policies, changed employees' schedules and pay rates, and hired and terminated employees. Plaintiff also contends that employees were "interchangeable" between Limani 51 and Limani of Roslyn, and that two managers and a captain worked at both locations. Plaintiff states that the restaurants are advertised on the same website, www.limani.com; they have "a common look and feel, use the same logos, and serve Mediterranean food with a focus on seafood;" the Restaurants share the "LIMANI" trademark; and that the same trade name and logo appear on the employee uniforms

and equipment at both locations.  The Restaurants have nearly identical menu items.  They share centralized payroll, human resources, and accounting departments.  Employees at both locations are subject to the same wage policies and receive the same employee handbook.

Plaintiff contends that he was not paid the minimum wage required by law in that Defendants improperly deducted meal credits from his pay.  He claims that the deductions were improper because he never consumed the meals his employer offered.

Plaintiff also alleges that Defendants discriminated against him on the basis of his race and national origin by paying him less than similarly situated white waiters, giving him less-desirable shifts than similarly situated white waiters, and denying him a promotion.  Two years into his job, Plaintiff complained to the Head Chef, but alleges that the discriminatory activities continued.  Shortly after voicing his complaints, Plaintiff alleges that he was assigned more undesirable shifts, managers began to "pick on him," and he was reprimanded daily.  Plaintiff was later assigned shifts on Friday afternoons, at which time, he claims, Defendants knew he could not work, because, as a Muslim, he was required to attend Friday prayer.

## LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  To survive a motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the supporting factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

**DISCUSSION**

Defendants move to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants contend that Plaintiff fails to state a claim that: (1) Defendants improperly deducted meal credits from his pay pursuant to the FLSA; (2) Limani of Roslyn is liable for violations of the FLSA, NYLL, State HRL, and City HRL; (3) Spyropoulos is liable for violations of the State HRL and City HRL; (4) Plaintiff was constructively discharged by Defendants in violation of the State HRL and City HRL; and (5) Plaintiff is a proper class representative.[2] Defendants also seek to strike Plaintiff's class allegations pursuant to Rule 23(d)(1)(D) for the reason listed at (5).[3] The Court denies Defendants' motion with respect to claims (1) and (2). The Court grants Defendants' motion with respect to (3) and (4). The Court addresses each claim in turn.

**I.     The Complaint States a Claim that Defendants Improperly Deducted Meal Credits**

Plaintiff asserts that Defendants violated the FLSA by deducting meal credits from his pay even though he did not consume the meals offered by Defendants.[4] There is no requirement that employees voluntarily accept (and consume) meals for employers to deduct meal credits from employees' pay pursuant to the FLSA. There is, however, a voluntary acceptance

---

[2] The Court need not address Defendants' motion to dismiss Plaintiff's class allegations because "Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations." *Garcia v. Execu|Search Group, LLC*, No. 17-CV-9401, 2019 WL 689084, at *3 (S.D.N.Y. Feb. 19, 2019) (Pauley, J.) (internal citations omitted).

[3] The Court need not address Defendants' motion to strike pursuant to 23(d)(1)(D). Since Defendants' "arguments are indistinguishable from the issues that would be decided in the context of a motion for class certification," the motion is procedurally premature. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113, 117 (S.D.N.Y. 2012) (Sand, J.) (internal citations omitted).

[4] He bases his claim, first, on the DOL's interpretation of the FLSA. Second, he bases his claim on the requirement that Plaintiff also asserts, in his opposition, that Defendants failed to provide Plaintiff with proper notice that meal credits would be deducted from his pay. Because Plaintiff's Wage Notice is not integral to the SAC, the Court does not consider it. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (explaining that a court may consider a document not referenced in a complaint when the document is "integral" to the complaint).

requirement pursuant to New York law.  The Court addresses each in turn.

### a. Voluntary Acceptance Requirement Pursuant to the FLSA

The FLSA permits employers to deduct meal credits from their employees' pay when meals are "customarily furnished" to employees.  FLSA § 3(m); 29 U.S.C. § 203(m)(1).  The Department of Labor ("DOL") has interpreted "furnished" to mean not only that an employer has offered meals to an employee, but also that the employee has accepted the offer, and has eaten those meals.  *See* 29 C.F.R. § 531.30.  Plaintiff relies on the DOL's interpretation to assert that Defendants violated the FLSA.

Because the DOL is an administrative agency, the Court must determine whether its interpretation of "furnished" is entitled to *Chevron* deference.  *See Doyle v. City of New York*, 91 F. Supp. 3d 480, 485 (S.D.N.Y. 2015) (Furman, J.) (analyzing whether the DOL's definition of "volunteer" was entitled to *Chevron* deference); *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168 (2d Cir. 2017) (evaluating whether a DOL regulation was entitled to *Chevron* deference).[5]  Pursuant to a *Chevron* analysis, the Court concludes that the DOL's interpretation of "furnished" in section 203(m) is unreasonable, and thus is not entitled to *Chevron* deference. [6]

### i. Federal Labor Standards Act

Section 203(m) of the FLSA permits employers to pay a portion of the minimum wage in

---

[5] Defendants argue that the DOL Wage and Hour Division ("WHD") Field Operations Handbook ("Handbook") is entitled to *Auer* deference. (U.S. Dep't. of Labor, Wage and Hour Div., Field Operations Handbook (2016).  *Auer* deference applies only when the "regulation at issue 'is genuinely ambiguous.'"  *Bey v. City of New York*, 999 F.3d 157, 166 (2d Cir. 2020) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).  DOL regulation 29 C.F.R. § 531.30 is not ambiguous, thus there is "no plausible reason for deference."  *See Kisor*, 139 S. Ct. at 2415.
[6] At *Chevron* step zero, courts ask whether the *Chevron* framework applies at all.  An "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.,* 533 U.S. 218, 226–27 (2001).  The DOL exercised its rulemaking authority when it promulgated 29 C.F.R. § 531.30.  The Chevron step zero inquiry is satisfied.

meals.  29 U.S.C. § 203(m).  Specifically, the statute defines "wage" to include "the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."  *Id.*

### ii.  Code of Federal Regulations

The DOL has promulgated regulations, via formal rulemaking, that interpret the FLSA. The regulation at issue interprets "furnished" from 29 U.S.C. § 203(m) to mean that "[n]ot only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced."  29 C.F.R. § 531.30.

### iii.  The Department of Labor's Interpretation of "Furnished"

When Congress entrusts rulemaking authority to an administrative agency, as it has with the DOL, courts evaluate an agency's interpretation using the two-step framework set forth in *Chevron*.  467 U.S. 837, 842–43 (1984); *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("The framework of deference set forth in *Chevron* does apply to [a DOL] interpretation contained in a regulation."); *see Nat. Res. Def. Council, Inc. v. EPA*, 961 F.3d 160, 169 (2d Cir. 2020) (applying *Chevron*'s two-step framework to evaluate the Environmental Protection Agency's interpretation of a statute).  At *Chevron* step one, courts must determine "whether the statute is ambiguous or silent on the specific question at issue."  *Woods*, 864 F.3d at 168 (2d Cir. 2017) (citing *Chevron*, 467 U.S. at 843–44).  If it is unambiguous, Congress's intent is clear, and the agency and courts must follow Congress's directive.  *Nat. Res. Def. Council, Inc*, 961 F.3d at 169.  If it is ambiguous or silent, courts proceed to *Chevron* step two.  *Id.*

Here, the FLSA does not define "customarily furnished."  The Act is silent as to whether an employee must voluntarily accept a meal for an employer to be permitted to deduct meal

credits from that employee's pay.  Thus, the Court proceeds to the second step of the *Chevron*

analysis.  *See Woods,* 864 F.3d at 168 (proceeding to *Chevron* step two when the statute was

silent on the specific question at issue); *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 916 (6th

Cir. 1999) (concluding the same).

At *Chevron* step two, courts ask whether the agency's "interpretation of the statute is

reasonable—both as a matter of statutory construction and as a matter of policy."  *Woods,* 864

F.3d at 169.  If the interpretation is reasonable, courts must defer to it.  *Cappetta v. Comm'r of*

*Soc. Sec. Admin.*, 904 F.3d 158, 166 (2d Cir. 2018); *Chevron*, 467 U.S. at 843.

This Court agrees with the three Circuit Courts of Appeals that have considered this

issue, and which have rejected the DOL's interpretation of "customarily furnished."  *Herman*,

176 F.3d at 917; *Donovan v. Miller Properties, Inc.*, 711 F.2d 49 (5th Cir. 1983); *Davis*

*Brothers, Inc. v. Donovan*, 700 F.2d 1368 (11th Cir. 1983).[7]  In light of the text and purpose of

the FLSA, the DOL misconstrues the term "customarily 'furnished'" in section 203(m) by

interpreting it to mean that an employee must voluntarily accept the meal his employer offers.

The Court's analysis begins, as it must, with the text of section 3(m), which does not

support the DOL's interpretation.  *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d

Cir. 2022) (explaining that an analysis at *Chevron* step two must begin with the "plain text of

[the statute]").  Section 3(m) of the FLSA provides that wages include the "reasonable cost" of

meals "customarily furnished" to employees.  29 U.S.C. § 203(m)(1).  Through its interpretation,

"the Secretary of Labor has in effect construed 'customarily furnished' by the *employer* to mean

'voluntarily accepted' by the *employee*."  *Davis Bros.*, 700 F.2d at 1370 (emphasis added).  The

meaning of the word "furnish" does not support this interpretation.  Because the FLSA does not

---

[7] Although *Herman* is the only circuit court decision that operated in a post-*Chevron* environment, the reasoning of *Donovan* and *Davis Brothers* applies to a *Chevron* analysis.

define "customarily 'furnished,'" the Court considers the ordinary meaning of the words. *Vango Media, Inc. v. City of New York*, 34 F.3d 68, 74 (2d Cir. 1994) ("When construing a statute, the plain meaning of the words Congress chose must be given effect, unless there is some good reason to suppose the legislature intended those words to have a more restrictive meaning."). "Furnish," used in the context of to "furnish someone with," means "supply someone with (something); give (something) to someone." *See* Furnish, *New Oxford American Dictionary* 1483 (3d ed. 2010). It is contrary to the ordinary meaning of the words for the DOL to conclude that whether an *employer* "customarily 'furnishes'" something depends on an *employee's* behavior. *See Herman*, 176 F.3d at 918 ("The use of this passive language in the provision supports the Eleventh Circuit's conclusion that § 203(m) looks to employer, not employee, behavior.")

Placing this statutory language in the context of the Act as a whole supports the same conclusion. The FLSA is about the obligations of employers, not the obligations of employees. *See* 4 No. 10 Employer's Guide Fair Lab. Standards Act News L. (The FLSA "focuses on what employers must do to comply with federal minimum wage and overtime requirements.") By construing "customarily 'furnished'" to allow deduction of a meal credit only if the employee accepts the meals, the DOL impermissibly shifts the focus of the statute from employer behavior to employee behavior. *See* 29 C.F.R. § 531.30.

The DOL's regulation reads into the statute a voluntary acceptance requirement that Congress did not include in the Act. Based on the language of section 203(m), the FLSA as a whole, and congressional intent, this Court concludes that the DOL's addition of a requirement that the employee accept the meals cannot be considered a reasonable interpretation of "furnished" from section 203(m) of the FLSA. Thus, the Court does not defer to it.

The Court interprets "furnished" according to its ordinary meaning – "to supply" – and holds the DOL's interpretation to be unreasonable.  The word "furnished" does not connote acceptance of that which is being supplied.

Plaintiff's argument, that because he did not consume the meals provided, Defendants violated the FLSA, fails.  This failure, however, is not fatal to Plaintiff's complaint.  Plaintiff's complaint states a claim that Defendants violated the FLSA in that they did not comply with the New York State law, which permits deduction of a meal credit only where the employee has accepted the meals.

### b.  Voluntary Acceptance Requirement Pursuant to New York Labor Law

Although, as stated above, the FLSA contains no requirement that an employee accept the meals offered for a meal credit to be taken, New York State law contains that requirement. New York Labor Law permits meal deductions only when an employee has "customarily eaten" meals provided by an employer.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.7; *De Jesus v. P&N Cuisine Inc.*, No. 20-CV-3619, 2021 WL 2380065, at *11 (S.D.N.Y. June 10, 2021) (Abrams, J.).  For a meal credit to be permissible pursuant to the FLSA, it must comply with state law.  29 C.F.R. § 531.31.  Plaintiff "never ate" the meals provided to him.  This alleged violation of New York law is sufficient to plead a FLSA violation.  *See Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642, 2016 WL 11263668, at *6 (E.D.N.Y. Nov. 23, 2016). Accordingly, Defendants' motion to dismiss on the ground that Plaintiff failed to state a claim that Defendants improperly deducted meal credits from his pay is DENIED.

## II.     The Complaint States a Claim that Limani of Roslyn was Plaintiff's Employer

Because Plaintiff has sufficiently pleaded that the Restaurants operated as a single

integrated enterprise, Plaintiff has sufficiently alleged that Limani of Roslyn was his employer.[8]

### i.  Single Integrated Enterprise Liability

Many courts have held that two nominally separate entities may be considered a single

employer when the entities are part of a single integrated enterprise.  The Second Circuit has

adopted that test in the context of the State HRL, but has not considered whether to apply that

test in the context of the FLSA or City HRL.  *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226–

28 (2d Cir. 2014).

District courts in this Circuit are divided on its application in the context of the FLSA,

but consistently apply it in the context of the City HRL.  *Compare Lopez v. Acme Am. Env't Co.*,

No. 12–CV–511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) (Pauley, J.) (employing a

different test—the economic reality test—to determine employer status), *with Juarez v. 449

Rest., Inc.*, 29 F. Supp. 3d 363, 367–68 (S.D.N.Y. 2014) (Nathan, J.) (applying the single

integrated enterprise test to conclude that plaintiff stated a FLSA claim against a nominally

distinct entity); *see Goldman v. Sol Goldman Invs.*, LLC, No. 20-CV-6727, 2021 WL 4198253,

at *3 (S.D.N.Y. Sept. 14, 2021) (Nathan, J.) (collecting cases that apply the single integrated

enterprise test in the context of the City HRL).

The Court agrees with the courts in this Circuit that have used the single integrated

enterprise test in the context of the FLSA and the City HRL.  The Court thus analyzes

Defendants' assertion that Limani of Roslyn is not liable for the alleged FLSA, State HRL, and

---

[8] Defendants confuse the standard for the single integrated enterprise test with the standard for the economic reality test, but put forth only arguments in support of the former.  The Court addresses only the single integrated enterprise test.

City HRL violations pursuant to the single integrated enterprise test.[9]  To determine whether

multiple defendants are a single integrated enterprise, courts consider: "(1) interrelation of

operations, (2) centralized control of labor relations, (3) common management, and (4) common

ownership or financial control."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 293 (2d Cir. 2016).

Additional facts that are weighed in this analysis include whether both: use "common decor,

name, menu and marketing; [] the same employees at multiple locations; the transfer of items

between restaurants; [] the same central payroll office, common storage space and leases; and the

distribution of common employee guidelines and procedures across different businesses."

*Khereed v. W. 12th St. Rest. Grp. LLC*, No. 15-CV-1363, 2016 WL 590233, at *4 (S.D.N.Y. Feb.

11, 2016) (Castel, J.) (collecting cases).  Ultimately, the decisive factor as to whether a named

defendant can face liability turns on control, whether formal or functional.  *Hsieh Liang Yeh v.

Han Dynasty, Inc.*, No. 18-CV-6018, 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019)

(Engelmayer, J.).

### ii.  Plaintiff's Allegations

Plaintiff has alleged many facts in support of his contention that Defendants operated as a

single integrated enterprise.  Plaintiff alleges that (1) Defendants' Restaurants are advertised on

the same website, www.limani.com; (2) they have "a common look and feel, use the same logos,

and serve Mediterranean food with a focus on seafood;" (3) they share the "LIMANI" trademark;

(4) the same trade name and logo appear on the employee uniforms and equipment at both

locations; (5) they have nearly identical menu items; (6) they share centralized payroll, human

resources, and accounting departments; (7) employees at both locations are subject to the same

wage policies and received the same employee handbook; (8) some employees worked at both

---

[9] Defendants' motion does not test the sufficiency of the NYLL allegations in Plaintiff's complaint.

locations; (9) Spyropoulos was responsible for hiring and firing employees at both locations;

(10) Spyropoulos changed employees' schedules and pay rates at both locations; and (11)

Spyropoulos set and enforced employment policies for all employees.

Plaintiff has sufficiently alleged that the Restaurants should be treated as a single

integrated enterprise and thus that Limani of Roslyn and Limani 51 should both be treated as

Plaintiff's employer.

Accordingly, Defendants' motion to dismiss the claims against Limani of Roslyn is

DENIED.

### III.    The Complaint Fails to State a Claim that Spyropoulos is Liable for Discrimination Pursuant to the State HRL and the City HRL.

Plaintiff has alleged that Defendants discriminated against him on the basis of his race

and national origin by paying him less than white waiters, giving him less-desirable shifts than

white waiters, denying him a promotion, critiquing him, and scheduling him to work on days he

was required to attend prayer.

Plaintiff argues that Spyropoulos is liable for the alleged discriminatory conduct pursuant

to two theories of liability: (1) employer liability; and (2) aiding and abetting liability.  Plaintiff

has failed to state a claim pursuant to either theory because first, Spyropoulos is not an

"employer," and second, Plaintiff did not allege that Spyropoulos knew or participated in the

alleged discriminatory conduct.  The Court addresses each in turn.

#### a.  Employer Liability

For a defendant to be vicariously liable for discrimination pursuant to the State HRL and

the City HRL, the defendant must be the plaintiff's "employer."  *See Bueno v. Eurostars Hotel

Co., S.L.*, No. 21-CV-535, 2022 WL 95026, at *6 (S.D.N.Y. Jan. 10, 2022) (Koeltl, J.).  The New

York Court of Appeals recently held that an "individual owner[] . . . of a business entity" does

12

not qualify as an "employer" pursuant to these statutes.  *Doe v. Bloomberg, L.P.*, 167 N.E.3d

454, 459–62 (N.Y. 2021).  As the Restaurants' owner, Spyropoulos cannot be held vicariously

liable as an "employer" pursuant to either the State or City HRLs.  *See Eurostars Hotel*, WL

95026, at *6.

### b.  Liability for Aiding and Abetting Discriminatory Conduct

The State HRL and the City HRL provide that a corporate owner can be liable for aiding

and abetting discriminatory conduct by others.  *Bloomberg*, 167 N.E.3d at 459; *see* N.Y. Exec. L.

§ 296(6); N.Y.C. Admin. Code § 8-107(6).  To state a claim for aiding and abetting unlawful

discrimination, a plaintiff must allege that the defendant "actually participate[d]" in the unlawful

conduct.  *Griffin*, 835 F.3d at 293. [10]  This type of liability requires that the "aider and abettor

share the intent or purpose of the principal actor."  *Id.* (internal citations omitted).  A

supervisor's failure to take remedial measures in response to receiving a complaint of

discrimination can constitute actual participation.  *McHenry*, 510 F. Supp. 3d. at 68 (quoting

*Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014) (Briccetti, J.)).

Plaintiff alleges that he was subject to adverse conditions and discrimination, and that he

"complained to management" and "the head chef."  The SAC makes no concrete allegation to

support his contention that Spyropoulos knew of, or participated in, the discriminatory conduct.

Plaintiff's aiding and abetting claim against Spyropoulos fails because Plaintiff has provided no

basis to infer that "management" and/or "the head chef" informed Spyropoulos of the alleged

discriminatory conduct.  Plaintiff has alleged no basis for holding Spyropoulos liable as an aider

---

[10] A Plaintiff claiming aiding and abetting must adequately allege that the employer engaged in discrimination
before an individual may be considered an aider and abettor. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d
51, 68 (S.D.N.Y. 2020) (Engelmayer, J.).  Defendant Limani of Roslyn disputes that it was Plaintiff's employer, but
does not dispute the adequacy of the factual pleadings of discrimination against it.  Since the Court held, *supra*, that
Plaintiff has sufficiently alleged that Limani of Roslyn and Limani 51 should both be treated as Plaintiff's employer,
the Court treats this as well pled.   Defendant Limani 51 does not dispute the adequacy of the factual pleadings of
discrimination against it.  The Court treats this, too, as well pled.

and abettor.

Accordingly, Defendants' motion to dismiss the State HRL and City HRL claims against Spyropoulos is GRANTED.

### IV.    The Complaint Fails to State a Claim that Plaintiff was Constructively Discharged by Defendants Pursuant to the State HRL and the City HRL.

Constructive discharge claims face a "demanding" standard.  *Miller v. Praxair, Inc.*, 408 Fed. App'x. 408, 410 (2d Cir. 2010) (summary order); *Pollock v. Shea*, 568 F.Supp.3d 500, 512 (S.D.N.Y. 2021) (Koeltl, J.).  Pursuant to the State HRL and City HRL, an employee is constructively discharged when his employer "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily."  *See Spires v. MetLife Grp., Inc.*, No. 18-CV-4464, 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (Abrams, J.) (discussing the standard for constructive discharge claims pursuant to the state HRL and quoting *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004)); *Gonzalez v. New York City Health & Hosp. Corp.*, No. 18-CV-2645, 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019) (Oetken, J.) (explaining the standard for constructive discharge claims pursuant to the City HRL).  A plaintiff must prove that (1) the employer intended to create intolerable work conditions, and (2) "an objectively reasonable person in the plaintiff's position would find [his] work conditions so intolerable as to compel resignation."  *Spires*, 2019 WL 4464393, at *9 (quoting *Petrosino*, 385 F.3d at 229).

Plaintiff alleges that due to his race and national origin, he was (1) allocated less in tips than white servers; (2) assigned undesirable shifts more frequently than white servers; (3) skipped over for promotions; (4) critiqued by management; and (5) after lodging complaints about (1), (2), (3), and (4) to the head chef, was scheduled to work on Fridays, despite Defendants "knowing full well that Plaintiff was a Muslim and was required to be at Mosque for

14

his Friday prayer."  Plaintiff gives no support for his allegation that Defendants knew "full well" that Plaintiff had to attend Friday prayer.

 Plaintiff's allegations are insufficient to state a claim that Defendants constructively discharged him.  He does not assert that the alleged discriminatory conduct was reported to Defendants, nor does he assert that Defendants intentionally created negative working conditions, because of his race and national origin, so as to compel him to resign.

Accordingly, Defendants' motion to dismiss the constructive discharge claims pursuant to the State HRL and City HRL is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part.  The Clerk of Court is respectfully directed to terminate all open motions.  The parties are directed to submit a proposed Civil Case Management Plan and Scheduling Order by September 23, 2022.


        SO ORDERED.

Dated: New York, New York
       August 31, 2022

                                    _____/s/ Kimba M. Wood_____
                                        KIMBA M. WOOD
                                    United States District Judge